MOLINE PLOW CO. v. PARLIN & ORENDORFF CO. et al.

(Circuit Court, N. D. Illinois, S. D.   December 13, 1897.)

PATENTS FOR INVENTIONS—ANTICIPATION—CORN PLANTERS.
  Letters patent No. 326,449, issued September 15, 1885, to Levi J. Odell, for an improvement in check-rower attachments for corn planters, are not void for anticipation.

Suit by the Moline Plow Company against the Parlin & Orendorff Company and others to restrain the infringement of a patent.

Offield, Towle & Linthicum and Paul A. Staley, for complainant.

Bond, Adams, Pickard & Jackson and George B. Parkinson, for defendants.

GROSSCUP, District Judge.   The bill is to restrain infringement of letters patent No. 326,449, to Levi J. Odell, dated September 15, 1885, for an improvement in check-rower attachments for corn planters.   The patentee, Odell, had previously (June 16, 1885) taken out a patent for a complete corn planter.   The patent under consideration refers to this previous patent, but does not, in my judgment, limit itself to being an improvement upon planters constructed under such previous patent.   The patent under consideration is distinctly a check-rower attachment, and was unquestionably designed to be used in connection with any corn planter to which it could be adapted. The invention is described in the letters patent as follows:

"In the accompanying drawing [immediately following this description], Fig. 1 is a perspective view of my invention.   Fig. 2 is a side elevation of the same; one of the seed tubes of the corn planter being partly broken away, so as to disclose the interior construction.   A represents one of my improved corn planters, having the hoppers, B, the seed tubes, c, and mechanism for feeding seeds from the hoppers into the seed tubes; but as such mechanism may be of any preferred construction, and forms no part of this invention, it is not necessary to fully describe it here.   To the outer sides of the hoppers are bolted bracket arms, a, which extend laterally out beyond, and in rear of, the supporting wheels; and to the outer ends of these arms are bolted bracket heads, b, which extend in the direction of the line of draft.   To the front end of each of these heads is bolted a bracket, c, having a substantially vertical guard finger, d; and to these brackets are journaled grooved pulleys, e, which are supported in nearly a horizontal position.   To the rear end of each of the heads, b, are also secured brackets, f, in which are journaled horizontal grooved wheels or rollers, g.   Levers, h, are fulcrumed to the outside of the heads, b, near the centers thereof.   The upper ends of these levers

are bifurcated, to leave arms or fingers, i, that diverge at their upper ends; and the lower ends of said levers extend below the heads, b, for a suitable distance. Coiled, retractile springs, k, are secured on the under sides of the heads, b, near the rear ends thereof; and the free ends of these springs are connected to the lower portions of the levers, h, so as to keep said levers normally in the position shown in the solid lines in the Fig. 2. In blocks, l, which are bolted or form with the rear sides of the seed spouts, is journaled a rock shaft, m, which extends transversely across the rear side of the corn planter, and has its outer ends bent upwardly, as at n, so as to form arms therefor. Short arms, o, project rearwardly from the rock shaft, in the line with the centers of the seed tubes, and are connected by rods, p, with seed valves, r, that are fulcrumed in the seed tubes, and have their short ends projecting rearwardly therefrom. These valves, when in the initial position shown in solid lines in Fig. 2, close the seed tubes, and collect the seeds that are dropped into the seed tubes by the seeding mechanism from the hoppers. A knotted cord or wire, such as is commonly used for check-row corn planters of this class, is stretched across the field, and passes on the sheaves, or grooved wheels, and between the fingers of the lever, on one side of the corn planter, and, as the planter is drawn along, the knots in the cord or wire successively catch in front of the fingers of the lever, and move the lever to the position shown in dotted lines in Fig. 2, which opens the valves, r, in the seed tubes, by reason of being connected to said valves, as before described, and causes the seeds collected by the valves to drop to the furrow. As the knot in the cord or wire passes beyond the lever, the springs return the lever to its natural position, and close the valves, to be again operated by the succeeding knot, and so on. The knots being equidistant from each other in the wire, it follows that the corn will be planted in the hills at regular intervals. On the return row the wire operates the lever on the opposite side of the planter."

Fig. 1.

*Fig. 2.*

Claim (1) of the patent is as follows:

"The combination, with the corn planter having seed tubes, of the valves in the tubes, the rock shaft connected to the valves, and having the bent arms, the bracket arms secured to the planter, and having the heads, the fulcrumed levers and guiding sheaves secured to the heads, the springs bearing on the levers, and said levers being connected to the arms of the rock shaft, and the knotted cord or wire passing through the sheaves for operating the levers and opening the valves, substantially as described."

The validity of the patent under consideration was considered in the case of Moline Plow Company v. Edward D. Harber et al., in the United States circuit court for the Southern district of Illinois. The bill in that case was founded upon the patent here involved, and the alleged infringing machine was similar, in nearly every respect, to the alleged infringing machine here. Both the question of the validity of the patent, and the fact of infringement, were in sharp contest, and many patents illustrative of the art were submitted to the court. I have re-examined a few of the patents said to be nearest to the one involved, and I concur in the holding of Judge Allen, that they anticipated in no material respect the invention under consideration. I have examined, also, such patents as were not submitted in the other case, but have been submitted in this, and I do not find any that constitute anticipation. I am of the opinion, also, that, if the complainant's patent is valid, the defendants' machine is clearly an infringement. Indeed, the principal question, expressly recognized as such by the counsel for the defense at the argument, arises upon an alleged fact wholly distinct from these anticipatory patents.

It is said that in the spring of 1882, and again in 1883, the George W. Brown Company, of Galesburg, Ill., successfully used in the field, planting corn, a planter containing an attachment very similar to the Odell attachment; and a machine was exhibited on the hearing, which, if the original, or a reproduction of the planter then used, would clearly constitute an anticipation. The evidence in support of this contention is impressive. I am not prepared to say that it does not embody the truth. But there are two facts, which, when taken

together, are cogent enough, in my judgment, to deprive it of the character of such convincing evidence as must, under the law, support a defense of this character. The first of these is that George W. Brown, who is said to have used this machine, was the pioneer in the field of corn-planter manufacturing and invention. His patents constitute much of the literature of this art. His litigations gave shape, largely, to the judicial decisions relating to the art. He was aggressive, both in advancing the art, and in claiming the benefit of his inventions therein. The second fact is that the Odell invention, when introduced, in 1887 or 1888, quickly supplanted the majority of its predecessors. Even the Brown Company adopted it as a part of their planter. It is confessedly, within the field it covers, the most useful and the most marketable device yet discovered. I cannot reconcile these two facts with the assumption that Brown successfully put, as early as 1882, a similar device in the field, and then abandoned it. If the experiment were successful, why did he not recognize its superior value,—a recognition that did come from him in 1890? Why was no patent applied for, or steps taken to protect his invention? Is not such inattention to his interests wholly at war with his previous history? Why should this leader in the art, with his eyes fully opened by successful experiment, relegate to a garret a device that, in the nature of things, was destined to supplant all its predecessors? An attitude such as this, to an improvement so advanced as this, by a man like Brown, is highly unnatural and improbable. In the face of these facts and circumstances, I have no such strong belief in the existence of the planter in 1882 and 1883, claimed by the defendants, as would justify a finding of anticipation. A decree may be entered as prayed for in the bill.